IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 19-cv-00796-RBJ

GALVIN INVESTMENT COMPANY, LLC,

      Plaintiff,

v.

BRENDA A. SMITH,

      Defendant.

---

ORDER ON DEFENDANT'S MOTION FOR ATTORNEY FEES

---

This matter is before the Court on defendant's motion for attorney fees [ECF No. 47]. For the reasons discussed below, defendant's motion is GRANTED.

## I. BACKGROUND

I summarize the facts as set out in this Court's order granting defendant's motion to dismiss. ECF No. 40. Plaintiff Galvin Investment Company is a Colorado limited liability company. Mr. Richard Galvin is its principal. ECF No. 1 at ¶1, 10. Defendant Brenda A. Smith is a tax advisor, financial consultant, licensed securities broker dealer, and certified public accountant. *Id.* at ¶1. The parties met in spring of 2016. *Id.* They began communicating about plaintiff's business ventures and ideas with which defendant agreed to assist. *Id.*

From late 2016 through spring 2017 plaintiff negotiated with Southern Minerals Group LLC ("Southern Minerals") for the purchase of 350,000 tons of magnetite concentrates, a treated

by-product of copper mining and milling operations. *Id.* at ¶4. Delivery of the concentrates required plaintiff to pledge a $100,000 letter of credit, which defendant agreed to provide. *Id.* at ¶¶4–5. Defendant never provided the letter of credit as promised. As a result, Southern Minerals terminated the contract. *Id.* at ¶5, 52. Instead, defendant obtained a contract to purchase 400,000 tons of magnetite concentrates herself from Southern Minerals. *Id.* at ¶6. The gross value of precious metals expected via extraction from the magnetite concentrates was a staggering $115,000,000,000. *Id.* at ¶¶7–8.

Plaintiff filed his complaint against defendant in this Court on March 18, 2019. ECF No. 1. Plaintiff pled the following six common law claims: (1) intentional interference with contract, (2) fraud and deceit, (3) promissory estoppel, (4) conversion, (5) breach of fiduciary duty, and (6) unjust enrichment. On February 18, 2020 this Court granted defendant's motion to dismiss the entire action without prejudice for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). ECF No. 40.

Defendant filed a motion for attorney fees under COLO. REV. ST. § 13-17-201 on March 19, 2020. ECF No. 47. Plaintiff responded on April 14, 2020. ECF No. 52. Defendant filed her reply the next day. ECF No. 53. Neither party has requested a hearing.

## II. ANALYSIS

### A. Whether COLO. REV. ST. § 13-17-201 applies

Defendant requests an award of attorney fees pursuant to COLO. REV. ST. § 13-17-201. That section states

> In all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action . . .

"An award of attorney fees under section 13–17–201 is mandatory when a trial court dismisses an action" under COLO. R. CIV. P. 12(b). *US Fax Law Ctr., Inc. v. Henry Schein, Inc.*, 205 P.3d 512, 517 (Colo. App. 2009). The statute is substantive. As a result, it also applies to diversity cases brought in federal court where tort claims are dismissed under FED. R. CIV. P. 12(b), including dismissals for lack of personal jurisdiction under 12(b)(2). *Jones v. Denver Post Corp.*, 203 F.3d 748, 757 (10th Cir. 2000), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). COLO. REV. ST. § 13-17-201 has been interpreted to apply to tort claims that allege only economic injury as well as those that involve physical harm to persons or property. *Houdek v. Mobil Oil Corp.*, 879 P.2d 417, 424 (Colo. App. 1994).

"[W]hen the action contains a mix of contract and tort claims, fees may be awarded if the action is primarily a tort action." *US Fax*, 205 P.3d at 517–18. In such a mixed-claim case the court must determine "whether the essence of the action was one in tort." *Castro v. Lintz*, 338 P.3d 1063, 1068 (Colo. App. 2014). "To determine whether § 13–17–201 applies, district courts focus on the manner in which the plaintiff's claims are pled." *Nero v. Am. Family Mut. Ins. Co.*, No. 11-CV-02717-PAB-MJW, 2013 WL 5323191, at *7 (D. Colo. Sept. 23, 2013) (citing *Dubray v. Intertribal Bison Co-op.*, 192 P.3d 604, 607 (Colo. App. 2008)).

A court making this determination "should rely on the pleading party's characterization of its claims and should not consider what the party should or might have pleaded." *Gagne v. Gagne*, 338 P.3d 1152, 1167 (Colo. App. 2014). This court explained the required approach:

> [A] Court must evaluate whether a "tort action" has been pled by examining the face of the pleading, not the underlying logic of the claims. It makes the plaintiff the master of his pleading: if the plaintiff chooses to plead claims in tort, he runs the risk of C.R.S. § 13–17–201 applying; if he wishes to avoid the application of the statute, he must refrain from pleading tort claims.

*Torres v. Am. Family Mut. Ins. Co.*, 606 F. Supp. 2d 1286, 1291 (D. Colo. 2009) (citations omitted). Courts must also consider whether the plaintiff included tort claims "to obtain relief beyond what was available solely under a breach of contract theory." *Dubray*, 192 P.3d at 607.

The *Dubray* court focused on the plaintiff's pleading six tort claims and only two non-tort claims against defendants. In the past this court has similarly taken a straightforward numbers approach to determining whether the "essence" of an action is tortious. *Williams v. Stewart Title Co.*, No. 18-CV-00397-PAB-NRN, 2020 WL 6162994, at *2 (D. Colo. Jan. 13, 2020) (collecting cases, noting number of tort versus non-tort claims in each case, and ultimately granting attorney fees because plaintiff pled more tort claims than non-tort claims); *see also Eim v. CRF Frozen Foods LLC*, No. 18-CV-01404-PAB-KLM, 2019 WL 1382790, at *7 (D. Colo. Mar. 26, 2019).

However, the number of tort versus non-tort claims is not always dispositive. Plaintiff points to Judge Krieger's summary of recent legal developments on this issue:

> [T]he most logical sequence to undertake this hybrid analysis is to first apply the "predominance" test, assessing whether the "essence of the action" is tortious in nature (whether quantitatively by simple number of claims or based on a more qualitative view of the relative importance of the claims) or not. The Court would then turn to the question of whether tort claims were asserted to unlock additional remedies only where the predominance test failed to yield a clear answer, such as when the tort- and non-tort claims are equal in number or significance . . . .

*Shell v. Henderson*, No. 09-CV-00309-MSK-KMT, 2014 WL 3716165, at *3 (D. Colo. July 28, 2014), *rev'd and remanded on other grounds*, 622 F. App'x 730 (10th Cir. 2015). The Colorado Court of Appeals later agreed with and applied this approach. *Gagne*, 338 P.3d at 1168. This test requires a court to analyze a complaint based on which claims a plaintiff pled and how she articulated them to determine whether tort claims predominate.

Plaintiff opposes defendant's motion for attorney fees. Applying the first part of the

4

*Shell* and *Gagne* test—predominance—plaintiff first argues that the "essence" of his action was contractual, not tortious, in nature. Plaintiff points to his claims for promissory estoppel and unjust enrichment, which he argues are "clearly contractual in nature." *Id.* Turning to this Court's order plaintiff quotes "all of GIC's claims arise out of Ms. Smith's alleged conduct related to the Southern Minerals contract—specifically Ms. Smith's promise to financially back GIC's contract with Southern Minerals, and her subsequent breach and fraudulent co-opting of that contract for her own benefit." ECF No. 52 at ¶5 (quoting ECF No. 40 at 12). Plaintiff concludes based on this sentence that this Court has already recognized the essence of his case is contractual. *Id.* The Court does not agree.

Plaintiff brought six claims, of which four were tort (intentional interference with contract, fraud and deceit, conversion, and breach of fiduciary duty) and two were contract or quasi-contract (promissory estoppel and unjust enrichment). Quantitatively, this suggests that tort claims predominate and are the essence of plaintiff's action. A qualitative review of the claims leads to the same conclusion. Plaintiff repeatedly referenced defendant's intentional conduct in allegedly failing to provide the $100,000 letter of credit and appropriating the multi-million-dollar business opportunity with Southern Minerals for herself. ECF No. 1 at ¶¶5–6, 48–49, 57–58, 73–74. Plaintiff's characterization of this Court's language in its prior order is unconvincing. This Court noted that the claims derive not just from defendant's promise but also her "fraudulent co-opting" of the Southern Minerals contract—language that sounds in tort, not contract.

Plaintiff asserts that his claims "hinge entirely upon Ms. Smith's failure to perform her promise to provide financial backing" to plaintiff. ECF No. 52 at ¶5. He cites to *Liberty*

5

*Bankers* for the premise that "[e]ven when tort claims are pled, the essence of an action is contractual when all claims are based on acts or omissions relating to breach of agreement." ECF No. 52 at 4 (citing *Liberty Bankers Life Ins. Co. v. First Citizens Bank & Tr. Co.*, 411 P.3d 111, 114 (Colo. App. 2014). In that case, however, the counterclaims in question were based entirely on alleged breaches of two participation agreements between the parties. *Id.* Here, plaintiff's claims are not based solely on the breach of the alleged agreement or on defendant's breaking her promise, i.e. her failure to timely provide the $100,000 letter of credit. Instead they are based largely on defendant's plan to *never* provide the letter of credit and to convert the deal with Southern Minerals into a contract for her own benefit. Had defendant simply failed to produce the letter of credit but done nothing else, it is unlikely plaintiff would have had evidence of intent enabling him to plead his suite of tort claims.

Comparing this case to the Supreme Court of Colorado's *Robinson* decision is also illuminating. In that case plaintiff sued the Colorado State Lottery Division because it continued to sell scratch tickets for months after the prizes had been awarded. *Robinson v. Colo. St. Lottery Div.*, 179 P.3d 998, 1001 (Colo. 2008). She framed her complaint in contract and quasi-contract terms, but the court ultimately dismissed the action under the Colorado Government Immunity Act because her claims did or could have sounded in tort. *Id.* However, the court refused to award attorney fees under COLO. REV. ST. § 13-17-201. It made this decision because plaintiff actually pled her case in contract, even though the factual thrust of her claims were tort-based. *Id.* at *1008–09. The inverse logic of *Robinson* holds here. Even if plaintiff's case were ultimately a matter of contract or quasi-contract on the merits, plaintiff pled the majority of his case in tort. I thus conclude that the essence of the claim is tortious.

6

Plaintiff next argues that even if the essence of the action were not predominantly contractual, he did not plead the tort allegations to unlock additional remedies. ECF No. 52 at 4; *Shell*, 2014 WL 3716165, at *3.  Here too, I must disagree.  Plaintiff states that unjust enrichment would have allowed greater relief than the tort claims through a constructive trust. *Id.*  This is a conclusory assertion, as plaintiff provides no reasoning or facts to support this position.  The Court also finds this conclusion unlikely.  If defendant had only broken her promise but not intentionally intervened in and converted plaintiff's contract with Southern Minerals, defendant would not have received any financial benefit from that contract from which she was unjustly enriched.  Furthermore, plaintiff sought damages not just for defendant's failure to fulfill her promise but also for her intentional interference in the Southern Minerals deal. Thus, even if plaintiff had pled tort and non-tort claims that were equal in number or significance, he included tort claims to obtain relief beyond what was available in contract.

Plaintiff also contends that under every claim for relief he sought compensation for business losses that derived from his inability to perform on the Southern Minerals contract.  It is conceivable that the types of damages plaintiff sought under each of his claims could be won in a purely contractual action.  *E.g.* ECF No. 1 at ¶53 (seeking an amount exceeding fifty million dollars for lost profits, pecuniary loss of benefits, lost business opportunity and prospective relationships, reputational harm, and consequential damages).  This suggests plaintiff could have brought at least part of this action as a contracts case.  However, the relevant question before this Court is not whether defendant's actions *in fact* ultimately sound more in contract or in tort, but rather how plaintiff pled his claims and whether he sought addition relief through tort claims. *Torres*, 606 F. Supp. 2d at 1291; *Dubray*, 192 P.3d at 607.

Finally, plaintiff's case is unlike cases in which this court has found an action to be predominantly contract-based and denied attorney fees under § 13-17-201.  For example, in *Leighton* the plaintiff pled promissory estoppel, unjust enrichment, and quantum meruit based on the City of Denver's failure to fully pay an artist for expenditures and services pursuant to an agreement related to a project proposal that the City ultimately rejected.  *Leighton v. City & Cty. of Denver*, No. 14-CV-02812-PAB-NYW, 2015 WL 5532751, at *9–10 (D. Colo. Sept. 21, 2015).  In *Schmidt* the court found that plaintiff's three contract and two tort claims were based on defendant's alleged breach of its employment agreement with plaintiff, which forced plaintiff to leave his work or relinquish hedge funds defendant had originally given him.  *Schmidt v. Wells Fargo & Co.*, No. 17-CV-01555-RBJ, 2019 WL 9406453, at *1 (D. Colo. May 6, 2019).  By contrast, here plaintiff's claims arise not just from his agreement with defendant but from defendant's alleged purposeful, wrongful actions that robbed plaintiff of a lucrative deal with Southern Minerals.

Plaintiff's action is primarily a tort action.  As a result, COLO. REV. ST. § 13-17-201 applies.  Though the outcome is unfortunate and counterintuitive, this is a situation where the law requires me to reward defendant's dishonest behavior.  I therefore GRANT defendant's motion for attorney fees.

### B. Amount of reasonable attorney fees

COLO. REV. ST. § 13-17-201 allows for the award of reasonable attorney fees.  In her motion defendant requested $17,173.00 in fees.  ECF No. 47 at ¶13.  Plaintiff objects to this amount on two grounds.  First, he argues that the amount defendant listed included paralegal fees, which plaintiff claims are not permitted under the statute.  He references the canon of

construction *expression unius est exclusio alterius* ("the express mention of one impliedly excludes others"). In essence plaintiff wants this Court to find that because the statute expressly references *attorney* fees but not other fees, such as paralegal fees, it does not cover the latter. Plaintiff thus contends that I should exclude from the amount owed $1,572.00 for paralegal fees.

Colorado courts have already addressed this issue. Both the Supreme Court of Colorado and the Colorado Court of Appeals have permitted the award of paralegal fees under attorney fees statutes. *Am. Water Dev., Inc. v. City of Alamosa*, 874 P.2d 352, 387 (Colo. 1994); *Newport Pac. Capital Co. v. Waste*, 878 P.2d 136, 140–41 (Colo. App. 1994). This court has also permitted the award of paralegal fees under § 13-17-201 specifically. *E.g. Snyder v. ACORD Corp.*, No. 1:14-CV-01736-JLK, 2019 WL 319407, at *8 (D. Colo. Jan. 24, 2019), *aff'd*, 811 F. App'x 447 (10th Cir. 2020); *Bldg. on Our Best LLC v. Sentinel Ins. Co. Ltd.*, No. 15-CV-00669-RBJ, 2016 WL 3193565, at *2 (D. Colo. May 6, 2016). I therefore will not exclude fees for defendant's paralegal from the amount owed.

Plaintiff's second argument points to a discrepancy in attorney Coleman's billing rate— the affidavit lists the hourly rate as $300, but the invoices calculate his fees with a rate of $325. ECF No. 52 at ¶7. Defendant has stipulated to reducing Mr. Coleman's rate to $300 for calculation of his fees. ECF No. 53 at 4–5. I accept this stipulation. This reduces the overall amount owed by $307.50. *Id.*

Plaintiff does not otherwise dispute that the billing records or rates were unreasonable. When an attorney fees statute does not define reasonableness, as is the case here, "the amount of the award must be determined in light of all the circumstances, based upon the time and effort reasonably expended by the prevailing party's attorney." *Tallitsch v. Child Support Servs., Inc.*,

9

926 P.2d 143, 147 (Colo. App. 1996) (citation omitted). The Court has reviewed the affidavit and invoices that defendant provided. The detailed billing records and accompanying affidavit are sufficient for defendant to establish reasonableness. The Court has also reviewed defendant's calculations and confirmed their general accuracy.

I note, however that COLO. REV. ST. § 13-17-201 permits the recovery of attorney fees for *defending* against a tort action. This Court has held in the past that "fees for work associated with the motion for fees itself are recoverable only where the trial court finds that the opposition to the motion lacked substantial justification." *Wyles v. Aluminaid Int'l, A.G.*, No. 15-CV-00393-CMA-KMT, 2016 WL 300845, at *4 (D. Colo. Jan. 25, 2016); *see also Monell v. Cherokee River, Inc.*, 347 P.3d 1179, 1184–85 (Colo. App. 2015); *Foxley v. Foxley*, 939 P.2d 455, 460 (Colo. App. 1996) (stating that the "substantial justification" analysis applies to attorney fees requested under § 13-17-201). Thus, a defendant is only entitled to fees for litigating a motion for fees if the plaintiff's defense to the motion is "substantially frivolous, substantially groundless, or substantially vexatious." *Monell*, 347 P.3d at 1184.

Plaintiff's defense to the motion for attorney fees here was not frivolous, groundless, or vexatious. Plaintiff's case arose partly out of a semi-contractual agreement, and he did plead quasi-contract or contract claims. He made persuasive arguments for why § 13-17-201 was inapplicable, though I ultimately am not ruling in his favor. I find that defendant is only entitled to fees for her defense against the tort action, not for the motion for fees and subsequent reply.

The total owed to defendant is thus reduced by the amounts applicable to work on defendant's motion for fees ($1,484.00) and defendant's reply ($1,000). ECF No. 47-3 (invoice dated March 19, 2020); ECF No. 53 at 5 (reference to four hours expended by defense counsel

on reply brief). The total is also reduced by the total costs defendant incurred ($158.85), which plaintiff asserts—and defendant does not dispute—he has already paid. The Court therefore awards a final total of $15,381.50 to defendant in attorney fees.

## ORDER

1. Defendant's motion for attorney fees pursuant to COLO. REV. ST. § 13-17-201 is GRANTED.
2. The Court awards attorney fees to defendant in the amount of $15,381.50.

DATED this 17th day of November, 2020.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge